**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | |
|---|---|
| KELLYE WASHINGTON<br>1633 Stonebury Court<br>Xenia, OH 45385<br><br>    Plaintiff,<br><br>        v.<br><br>WAYFAIR, LLC<br>4 Copley Place, Fl 7<br>Boston, MA 02116<br><br>**Serve Also:**<br>Wayfair, LLC<br>c/o Incorporating Services LTD<br>(Stat. Agent)<br>3958- D Brown Park Drive<br>Hilliard, OH 43026<br><br><br>    Defendant. | CASE NO.<br><br>JUDGE:<br><br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Kellye Washington, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Washington is a resident of the city of Xenia, Greene County, Ohio.

2. Defendant WAYFAIR, LLC ("Wayfair") is a foreign-incorporated company that conducts business within the state of Ohio.

3. The relevant location the events and omissions of this Complaint took place was 1633 Stonebury Court, Xenia, OH 45385.

4. Wayfair is, and was at all times hereinafter mentioned, Washington's employer within the meaning of The Americans with Disability Act ("ADA") 42 U.S.C. § 12101, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e and R.C. § 4112 et seq.

5. Within 300 days of the adverse employment actions described herein, Washington filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-02437 ("EEOC Charge").

6. On or about October 7, 2022, the EEOC issued and mailed a Notice of Right to Sue letter to Washington regarding the EEOC Charge.

7. Washington received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

8. Washington has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

9. Washington has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

10. All of the material events alleged in this Complaint occurred in or around Greene County, Ohio.

11. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under Title VII and the ADA.

13. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to Plaintiff's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

15. Washington is a former employee of Wayfair.

16. At all times noted herein, Washington was qualified for her position(s) at Wayfair.

17. At all times noted herein, Washington could fully perform the essential functions of her job(s), with or without a reasonable accommodation.

18. Washington, as a Christian woman/female, is in protected classes for her religion and race respectively.

19. Washington has chronic migraines due to a previous injury and therefore is in a protected class for disability.

20. Washington is also in the disability protected class via association for her close relationship with her children, discussed *infra*.

21. Washington worked for Wayfair as a remote Sales Consultant from September 27, 2021, until Wayfair unlawfully terminated Washington's employment on May 26, 2022.

22. In January 2022 Washington was reassigned to a team headed by Dianne Jakes.

23. Up until this point, Washington had no problems with her job and genuinely enjoyed working with Defendant.

24. However, one week later, Washington was assigned to a team headed by Shelly England, and the work environment deteriorated rapidly.

25. Under England's supervision, the focus of the team was entirely on metrics and performance.

26. Because of this, England would implement many policies which made it hard for Washington to do her job.

27. For example, calls were required to be under eight minutes.

28. When Washington would go on short breaks, England would tell her to watch the metrics and only stay away for five minutes.

29. Employees were also discouraged from asking questions.

30. When Washington would ask questions, England would send a link to the website infohub instead of answering the questions.

31. This would make things difficult for Washington because the articles were not helpful, and she would often need immediate answers as she was on the phone with a customer. Reading these long articles would also make it difficult to keep calls under eight minutes.

32. When Washington would need to take time off for her children or because of illness, she would be ignored.

33. Furthermore, when Washington reported customers who were rude or threatening, she would be warned for not respecting the customers.

34. Because of all these issues, Washington was placed under an enormous amount of stress.

35. After a point, Washington began crying through her lunch break nearly every day.

36. In December 2021, Washington started experiencing major hair loss from the stress and needed to change her hair. Washington also experienced skin irritation and acne.

    a. These were all physical manifestations of the stress Washington was experiencing from Wayfair.

37. On some occasions, Washington needed to take time off to take her child to speech therapy and physical therapy, for Easter and to go on her honeymoon.

38. Every time Washington was denied time off, despite that her colleagues outside her protected class were not.

39. Washington was given attendance points for needing time off.

40. Washington tried to use both paid and unpaid time off but over half of the time, her requests were denied.

41. When Washington got married on March 26, 2022, she took off for two weeks.

42. Washington received a verbal warning for this time off work.

43. When Washington had an IUD that was causing the rupture of ovarian cysts, a very serious health concern, she was still denied time off to address it.

44. Instead, Washington received attendance points.

45. On one occasion Washington's child was sick and her husband was out of town, so she needed time off to care for her.

46. However, senior lead Tobin Kershaw told Washington to ask friends and family for help and didn't approve her leave.

47. Washington had to leave, and informed England about this.

48. All of Washington's reasonable requests for time off were denied.

49. Washington reached out to Kershaw for these issues but was ignored.

50. Washington also reached out to Aurora Hernandez from HR asking that her attendance points be removed because she was gone for medical reasons. These were protected complaints of discrimination.

51. However, Washington's request to remove the attendance points was denied.

52. Washington also asked for Easter off for religious reasons.

53. After waiting a period of time, this was eventually approved.

54. This entire time, Washington was not allowed to swap shifts with anyone to accommodate for the time she needed off.

55. The week of April 11, 2022, Washington had a meeting with Hernandez and Kershaw to discuss these issues and ask that she can exchange shifts. This meeting was another protected action and an attempt to engage in the interactive process of finding a reasonable accommodation.

56. During the meeting, Washington was given a vague promise of talking about this in the future.

57. Later, during the week of April 16 to April 28, 2022, Washington needed to take time off of work to care for her sick daughter.

58. Washington informed her direct manager and skip-level manager via Slack and messages that she would be doing this.

59. However, one month later, Washington received a final written warning for "work avoidance," despite that these were medical issues.

60. Washington reached out to Wayfair to request medical leave for her various disabilities.

61. On or about May 19, 2022, Washington began a set of updates to her computer that lasted seven hours.

62. During that time, Washington had to leave work early due to migraines and nausea she was experiencing. Washington informed Wayfair of this.

63. Although Washington clocked in, she had to run to the bathroom to vomit, and the computer was updating, therefore she couldn't clock out.

64. However, that day was classified as work avoidance, and led to the termination of Washington's employment.

65. A few days later, on or about May 23, 2022, Wayfair approved Washington's medical leave.

66. On May 26, 2022, Washington's employment was terminated, citing work avoidance.

67. On May 26, 2022, Wayfair unlawfully terminated Washington's employment.

68. Wayfair did not have an overriding justification for Washington's dismissal.

69. Alternatively, Wayfair's cited reason for Washington's termination was pretextual.

70. Washington was discriminated against due to her religion, sex/gender, and disability.

71. Washington was retaliated against for making complaints of discrimination in the workplace.

72. Washington was terminated due to her religion, sex/gender, and disability and/or in retaliation for her opposition to discrimination in the workplace.

73. There was a causal connection between Washington's protected classes (religion, sex/gender, and disability) and complaints and Defendant's adverse actions taken against Washington.

74. Defendant's purported reason for Washington's termination is pretext for religious, sex/gender, and disability discrimination and/or retaliation for opposition to discrimination.

75. As a result of being discriminated against during her employment with Wayfair, and being terminated from Wayfair, Washington has had and continues to accrue damages based thereupon.

76. As a result of Wayfair's acts and omissions, Washington has suffered, and will continue to suffer, damages, including economic, emotional distress and physical sickness damages.

**COUNT I: RELIGIOUS DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

77. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

78. Defendant is that unique employer who discriminates against the majority.

79. Defendant treated Washington differently than other similarly situated employees based upon her religion.

80. Defendant's termination of Washington was an adverse employment action against her.

81. Defendant's purported reason(s) for Washington's termination was pretextual.

82. Defendant actually terminated Washington's employment due to her religion.

83. Defendant violated R.C. § 4112 *et seq*. by terminating Washington because of her religion.

84. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Washington differently from other similarly situated employees outside her protected class.

85. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Washington's religion.

86. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Washington's religion.

87. As a direct and proximate result of Defendant's conduct, Washington has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII**

88. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

89. <u>Defendant is that unique employer who discriminates against the majority.</u>

90. Defendant treated Washington differently than other similarly situated employees based upon her religion.

91. Defendant's termination of Washington was an adverse employment action against her.

8

92. Defendant's purported reason(s) for Washington's termination was pretextual.

93. Defendant actually terminated Washington's employment due to her religion.

94. Defendant violated Title VII by terminating Washington because of her religion.

95. Defendant violated Title VII by treating Washington differently from other similarly situated employees outside her protected class.

96. Defendant violated Title VII by applying its employment policies in a disparate manner based on Washington's religion.

97. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Washington's religion.

98. As a direct and proximate result of Defendant's conduct, Washington has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT III: GENDER/SEX DISCRIMINATION IN VIOLATION OF R.C. 4112 et seq.**

99. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

100. Washington is a member of a statutorily protected class based on her gender/sex under R.C. § 4112 et seq.

101. Defendant discriminated against Washington on the basis of her gender/sex throughout her employment with the company.

102. Defendant treated Washington differently than other similarly situated employees based upon her gender/sex.

103. Defendant's termination of Washington was an adverse employment action against her.

104. Defendant's purported reason(s) for Washington's termination was pretextual.

105. Defendant actually terminated Washington's employment due to her gender/sex.

106. Defendant violated R.C. § 4112 *et seq*. by terminating Washington because of her gender/sex.

107. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Washington differently from other similarly situated employees outside her protected class.

108. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Washington's gender/sex.

109. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Washington's gender/sex.

110. As a direct and proximate result of Defendant's conduct, Washington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII**

111. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

112. Washington is a member of a statutorily protected class based on her gender/sex under Title VII.

113. Defendant discriminated against Washington on the basis of her gender/sex throughout her employment with the company.

114. Defendant treated Washington differently than other similarly situated employees based upon her gender/sex.

115. Defendant's termination of Washington was an adverse employment action against her.

116. Defendant's purported reason(s) for Washington's termination was pretextual.

117. Defendant actually terminated Washington's employment due to her gender/sex.

118. Defendant violated Title VII by terminating Washington because of her gender/sex.

119. Defendant violated Title VII by treating Washington differently from other similarly situated employees outside her protected class.

120. Defendant violated Title VII by applying its employment policies in a disparate manner based on Washington's gender/sex.

121. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Washington's gender/sex.

122. As a direct and proximate result of Defendant's conduct, Washington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT V: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 et seq.**

123. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124. Washington is disabled.

125. In the alternative, Defendant perceived Washington as being disabled.

126. Washington's condition constituted a physical impairment.

127. Washington's condition substantially impaired one or more of her major life activities including working.

128. Defendant perceived Washington's condition to substantially impair one or more of her major life activities including working.

129. Defendant treated Washington differently than other similarly-situated employees based on her disabling condition.

130. Defendant treated Washington differently than other similarly-situated employees based on her perceived disabling condition.

131. Defendant's discrimination against Washington based on her disability violates R.C. § 4112 et seq.

132. Defendant violated R.C. § 4112.02 by discriminating against Washington based on her disabling condition.

133. Defendant violated R.C. § 4112.02 by discriminating against Washington based on her perceived disabling condition.

134. As a direct and proximate result of Defendant's conduct, Washington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

135. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. Washington is disabled.

137. In the alternative, Defendant perceived Washington as being disabled.

138. Washington's condition constituted a physical impairment.

139. Washington's condition substantially impaired one or more of her major life activities including working.

140. Defendant perceived Washington's condition to substantially impair one or more of her major life activities including working.

141. Defendant treated Washington differently than other similarly-situated employees based on her disabling condition.

142. Defendant treated Washington differently than other similarly-situated employees based on her perceived disabling condition.

143. Defendant violated the ADA by discriminating against Washington based on her disabling condition.

144. Defendant violated the ADA by discriminating against Washington based on her perceived disabling condition.

145. As a direct and proximate result of Defendant's conduct, Washington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: FAILURE TO ACCOMMODATE UNDER THE ADA

146. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. Washington informed Defendant of her disabling condition.

148. Washington requested accommodations from Defendant to assist with her disabilities.

149. Washington's requested accommodations were reasonable.

150. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

151. Defendant failed to engage in the interactive process of determining whether Washington needed an accommodation.

152. Defendant failed to provide an accommodation.

153. Defendant violated the ADA.

154. As a direct and proximate result of Defendant's conduct, Washington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT VIII: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.01 et seq.

155. Washington restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. Washington informed Defendant of her disabling condition.

157. Washington requested accommodations from Defendant to assist with her disabilities.

158. Washington's requested accommodations were reasonable.

159. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

160. Defendant failed to engage in the interactive process of determining whether Washington needed an accommodation.

161. Defendant failed to provide an accommodation.

162. Defendant violated R.C. § 4112.02 by failing to provide Washington a reasonable accommodation.

163. Washington suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

164. As a direct and proximate result of Defendant's conduct, Washington suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

### COUNT IX: RETALIATORY DISCRIMINATION

165. Washington restates each and every prior paragraph of this complaint, as if it were fully restated herein.

166. As a result of the Defendant's discriminatory conduct described above, Washington complained about the discrimination she was experiencing.

167. Subsequent to Washington's reporting of discrimination against her to her employer, Washington's employment was terminated.

168. Defendant's actions were retaliatory in nature based on Washington's opposition to the unlawful discriminatory conduct.

169. Pursuant to R.C. §4112.02(I), Title VII, and the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

170. Washington suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA, Title VII, and R.C. § 4112.01 *et seq*.

171. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Washington, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Washington demands from Defendant the following:

    a) Issue a permanent injunction:

        i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

        ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

  iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

  iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

  v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Washington's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Washington for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Washington's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

                Respectfully submitted,

   /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
      Trial Attorney
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Kellye Washington*

17

## **JURY DEMAND**

Plaintiff Kellye Washington demands a trial by jury by the maximum number of jurors permitted.

    /s/ Evan R. McFarland
Evan R. McFarland (0096953)